UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAN TIGRANYAN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF CALIFORNIA CITY DETENTION,<br><br>Respondent. | No. 1:25-cv-01554-DJC-SCR<br><br>ORDER AND<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1). For the reasons explained in further detail below, the undersigned recommends granting petitioner's habeas corpus petition by requiring respondent to provide him with an individualized bond hearing before an immigration judge at which the government must demonstrate by clear and convincing evidence that he is a flight risk or a danger to the community.

**I.      Factual and Procedural History**

Petitioner is an Armenian national who was stopped by U.S. Customs and Border Protection ("CBP") at the San Ysidro Port of Entry on October 30, 2024 without valid documentation to enter the United States.[1] ECF No. 6-1 at 5. He has no criminal history. ECF

---

[1] The facts set out in this section are taken from petitioner's verified § 2241 petition as well as other evidence in the record.

1

No. 6-1 at 6. He was placed in expedited removal proceedings pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. ECF No. 6-1 at 7. However, since petitioner indicated that he feared being returned to his home country and wanted to apply for asylum, an asylum officer conducted a credible fear interview on December 10, 2024. ECF No. 6-1 at 6. Petitioner was served with a Notice to Appear ("NTA") on the same date and scheduled to appear before an immigration judge ("IJ") on December 20, 2024. ECF No. 6-1 at 9-10. On approximately March 6, 2025, petitioner submitted his I-589 Application for Asylum and withholding of removal. ECF No. 12-1 at 3 (Declaration of Immigration Counsel Naira Zohrabyan). In response to the NTA, petitioner admitted the charges of removability on March 13, 2025. ECF No. 6-1 at 13-16. Petitioner's individual hearing date on his asylum application was originally scheduled for March 24, 2025. ECF No. 6-1 at 13. However, according to respondent, petitioner requested continuances of that hearing on three separate occasions. ECF No. 6-1 at 2 (Declaration of Deportation Officer Travis C. Mears); see also ECF No. 12-1 at 3-4. Petitioner was ready to proceed at his individual hearing scheduled for September 30, 2025, but, due to other pending matters that were heard that same day, petitioner's case was continued to October 9, 2025. ECF No. 12-1 at 9 (Notice of Hearing on 9/30/25); ECF No. 12-1 at 4; ECF No. 12-1 at 11 (Notice of Hearing on 10/9/25). The same thing occurred on October 9, and petitioner's individual hearing was continued until October 31, 2025. ECF No. 12-1 at 13 (Notice of Hearing on 10/31/25); ECF No. 12-1 at 4. For unexplained reasons, petitioner's individual hearing was removed from the calendar on October 31 and continued until January 20, 2026. ECF No. 12-1 at 5; ECF No. 12-1 at 15 (Notice of Hearing on 1/20/26). As during prior hearing dates that resulted in continuances, the IJ scheduled to hear petitioner's asylum application on that day has two additional individual hearings scheduled for the same day. ECF No. 12-1 at 5.

Proceeding pro se, petitioner filed the instant § 2241 petition challenging his ongoing immigration detention without a bond hearing on November 13, 2025. ECF No. 1. Specifically, petitioner contends that his Fifth Amendment right to due process has been violated based on his detention in excess of six months without a bond determination hearing. Id. at 6. Even though he has been in custody since October 30, 2024, his immigration merits hearings have been

1  repeatedly delayed. Id. By way of relief, petitioner requests a bond determination hearing by a
2  neutral decision maker. Id. at 7. The Court appointed petitioner counsel on December 4, 2025.
3        Respondent submits that petitioner is being lawfully detained pursuant to 8 U.S.C. §
4  1225(b)(1) while his asylum application is pending. ECF No. 6 at 2. Respondent notes that
5  petitioner is an "applicant for admission" to the United States because he was stopped at the San
6  Ysidro Port of Entry without any valid entry documents. ECF No. 6-1 at 5-7 (DHS Record of
7  Deportable/Inadmissible Alien). As a result, petitioner "was deemed inadmissible because of the
8  lack of necessary documents, but asserted a fear of persecution and was referred to an asylum
9  officer" for a credible fear interview. ECF No. 6 at 3 (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (ii)).
10 Respondent argues that petitioner is subject to mandatory detention until such time as his asylum
11 application is resolved. Respondent relies on the Supreme Court's decision in Jennings v.
12 Rodriguez, 583 U.S. 281, 302 (2018), for the proposition that the immigration detention statute at
13 issue, § 1225(b)(1), authorizes mandatory detention "throughout the completion of applicable
14 proceedings." ECF No. 6 at 3. Respondent also submits that petitioner has been responsible for
15 numerous delays in the adjudication of his asylum application, thus prolonging the detention of
16 which he complains. ECF No. 6 at 2, 4. According to respondent, "applicants for admission,
17 such as Petitioner, lack any constitutional due process rights with respect to admission aside from
18 the rights provided by statute." Id. at 4 (citing Shaughnessy v. United States ex rel. Mezei, 345
19 U.S. 206, 212 (1953), superseded by statute as explained in DHS v. Thuraissigiam, 591 U.S. 103
20 (2020)). Respondent takes the position that the due process rights of U.S. citizens and non-
21 citizens are not coextensive and that the length of petitioner's incarceration is not presumptively
22 unconstitutional absent a bond hearing. ECF No. 6 at 4-5 (citing Rodriguez Diaz v. Garland, 53
23 F.4th 1189, 1206 (9th Cir. 2022)).
24       The counseled reply brief filed by petitioner acknowledges the statutory basis for his
25 mandatory detention pursuant to 8 U.S.C. § 1225(b). However, petitioner is challenging the
26 temporal scope of that detention and contends that the Fifth Amendment's Due Process Clause
27 limits the amount of time that a non-citizen can be detained without a bond hearing. ECF No. 12
28 at 5-6. Petitioner's as-applied constitutional challenge to his detention involves both substantive

and procedural components. ECF No. 12 at 6-7. In support of his procedural due process challenge, petitioner submits that the test announced in Mathews v. Eldridge, 424 U.S. 319 (1976), should be applied. According to petitioner, each of the three Mathews factors, weighs in his favor and justifies being granted a bond hearing before a neutral adjudicator. Id. at 8. Petitioner also points out that "it is far from guaranteed that the Immigration Court will be available to start and complete its consideration of Mr. Tigranyan's case at his next hearing on January 20, 2026" due to its "history of triple-booking individual hearings" that resulted in three sua sponte continuances of his case. ECF No. 12 at 9-10. As a result, "[t]here is no identifiable end to Mr. Tigranyan's detention," especially since either party may appeal the IJ's asylum determination to the Board of Immigration Appeals ("BIA") and then petition for review by the Ninth Circuit Court of Appeals. Id. at 13-14.

In an authorized sur-reply brief, respondent does not specifically respond to any of petitioner's arguments, instead relying on the previously-filed response. ECF No. 14.

**II.     Legal Standards**

    **A. Constitutional Standards**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). This provision "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). Freedom from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty protected by the Due Process Clause." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining

4

whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz, 53 F.4th at 1206-07. Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

### B. Statutory Immigration Framework

An applicant for admission is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. 8 U.S.C. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) [non-citizen] "indicates either an intention to apply for asylum ... or a fear of persecution," then that [non-citizen] is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing. The only statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-

citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

### III. Analysis

#### A. Petitioner Has a Protected Liberty Interest Against Unjustified Detention

This case turns on the scope of constitutional protections afforded to a non-citizen who has not been admitted into the United States, but has a pending claim for asylum that has been determined to be credible. Based on the bona fide nature of petitioner's asylum claim, he is not subject to expedited removal, but instead a prolonged period of detention as his individual case is heard first by an IJ and then, potentially, by the BIA and the Ninth Circuit Court of Appeal if either party pursues further review. Given the protracted nature of obtaining merits review of his asylum claim and not one, but two potential appeals, there is no clear end in sight to petitioner's detention, which has now lasted for nearly 15 months.

Respondent takes the position that petitioner's constitutional rights go no further than the procedures authorized by the immigration detention scheme that authorizes his detention. See 8 U.S.C. § 1225(b). However, petitioner notes that his due process rights to liberty from unjustified detention are well established. ECF No. 5-6. "[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately "alleged a right to substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the

imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [noncitizens] were not protected by even the substantive component of constitutional due process, … we do not see why the United States government could not torture or summarily execute them. … [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). Moreover, mandatory detention statutes like § 1225(b)(1) are subject to constitutional limitations on an as-applied basis. See, e.g., Nielsen v. Preap, 586 U.S. 392, 420 (2019); Demore v. Kim, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).

Respondents' authority does not clearly address the rights to personal liberty of asylum seekers arrested at or near the border and subjected to prolonged detention. As petitioner points out, "[m]ost of the cases Respondent cites do not even analyze due process claims against detention; instead, they challenge congressional line-drawing in the substantive rules governing admission and deportation." ECF No. 12 at 6. For example, DHS v. Thuraissigiam, 591 U.S. 103 (2020), addressed judicial review of negative asylum determinations. Having failed to present a bona fide asylum claim to an asylum officer, the supervising officer, and an IJ, Thuraissigiam was subject to removal without further hearing or review. Thuraissigiam, 591 U.S. at 114. In this context, the Supreme Court's due process analysis did not touch upon the issue of an asylum applicant's detention after having established a credible fear of persecution. Id. at 115 (requesting "an injunction, or a writ of mandamus directing the Department to provide him a new opportunity to apply for asylum"). Thuraissigiam's "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." Padilla, 704 F.Supp.3d at 1171-72. Accordingly, the undersigned concludes that Thuraissigiam, and the earlier admission-and-status cases upon which it relies, "do[] not foreclose ... due process claims which seek to vindicate a right to a bond hearing with certain procedural protections." Padilla, 704 F. Supp. 3d at 1172; see also Abduraimov v. Andrews, No. 1:25-cv-00843-EPG-HC, 2025 WL 2912307, at *5 (E.D. Cal. Oct. 14, 2025) ("None of these cases concerned a challenge to prolonged immigration detention and none of the issues raised in these cases are implicated in the instant proceeding."). Petitioner can accordingly invoke the Due

7

Process Clause to seek protections against unjustified detention that extend beyond what Congress provided in § 1225(b).

### B. Due Process Framework for Evaluating Petitioner's Claim to a Bond Hearing

Petitioner argues that he is entitled to a bond hearing under the procedural due process Mathews v. Eldridge, 424 U.S. 319 (1976), framework.[2] The court applies that framework here and concludes that a prompt bond hearing is necessary, at which bond hearing respondent would bear the burden demonstrating continued detention is warranted. See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *4 (E.D. Cal. May 16, 2025), adopted by 2025 WL 1808676 (E.D. Cal. July 1, 2025) (applying Mathews in case involving § 1225(b)(1) detention to order a bond hearing before an immigration judge); Maksim v. Warden, Golden State Annex, et al., No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328 (E.D. Cal. Oct. 9, 2025) (same).

#### 1. Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without a neutral detention hearing. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner has been detained almost 15 months. Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged. See Zadvydas, 533 U.S. at 701. An individual's private interest in "freedom from prolonged

---

[2] While the procedural due process framework is sufficient for resolving this petition, the undersigned notes that substantive due process would also dictate that a bond hearing is necessary to test whether further prolonged detention is justified. See Padilla, 704 F. Supp. 3d at 1172 (recognizing need for bond hearings under substantive due process because "non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); see also Doe v. Beccera, 732 F. Supp. 3d 1071 (N.D. Cal. 2024) (applying five-factor test "regarding detention before criminal trial and civil commitment proceedings [to determine] whether continued detention" under another mandatory detention statute, 8 U.S.C. § 1226(c), "violates substantive due process").

detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez v. Garland, 631 F.Supp.3d 870, 880 (E.D. Cal. 2022) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).

While some of petitioner's prolonged detention is the result of continuances he requested in his immigration court proceedings, additional continuances have also resulted from a clogged immigration court docket. See Lopez, 631 F.Supp.3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process."). Petitioner correctly points out that although he has an individual hearing date in immigration court, that does not mean that his asylum application will be resolved on that date due to the total number of cases that are calendared for the same day. Moreover, a decision by the IJ is not the end of petitioner's asylum case since either side may appeal to the BIA and then petition for review by the Ninth Circuit resulting in petitioner remaining in detention. Thus, there is no clear end date for petitioner's detention on the record before this court.

Petitioner also identifies credible information tending to show harsh conditions at California City, which are particularly troubling in light of petitioner's reportedly deteriorating mental health. See ECF No. 12 at 8 (citing investigation and report by Disability Rights California finding that California City fails to provide necessary medical and mental health care and fails to other meet basic needs); Doe v. Chestnut, __ F.Supp.3d __, No. 1:24-CV-00943-EPG-HC, 2025 WL 3240400, *20-*22 (E.D. Cal. Nov. 20, 2025) ("[t]he evidence now before the Court at least suggests several important ways in which the conditions at [California City] are not only inherently harsh but also worse than the conditions […] in state prison.") (citing Doe, 732 F.Supp.3d. at 1089 (N.D. Cal. 2024)). All of these circumstances combine to tip the first Mathews factor strongly in petitioner's favor.

**2. Risk of Erroneous Deprivation**

"[T]he probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all." Maksim, 2025

9

1  WL 2879328, at *5. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing
2  before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th
3  Cir. 2011) (abrogated on other grounds); see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th
4  Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention
5  without any process is constitutional"); Diop v. ICE, 656 F.3d 221, 235 (3d Cir. 2011) (detention
6  of an non-citizen under mandatory detention statute for "nearly three years without further inquiry
7  into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a
8  risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process
9  Clause"). Against this background, a bond hearing is a critical procedural safeguard because it
10 provides both the noncitizen and the government with an opportunity to present witness testimony
11 or evidence and be heard before a neutral adjudicator. This factor also favors petitioner.[3]

### 3. Government's Interest

13 Under this factor, the Court weighs the government's interest, "including the function
14 involved and the fiscal and administrative burdens that the additional or substitute requirement
15 would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting
16 removal, and in protecting the public from danger." Maksim, 2025 WL 2879328, at *5 (citations
17 omitted). "[H]owever, the key government interest at stake here is not the continued detention of
18 Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and
19 quotation omitted). Petitioner's individual request for a bond hearing also involves a minimal
20 fiscal and administrative burden. In this case, respondent chose not to address any of the factors
21 in Mathews. Thus, there is not even the suggestion, much less a basis in the record to find, any
22 fiscal or administrative burden to the government that would result from providing a bond hearing
23 to petitioner. The undersigned also agrees with petitioner that "[h]olding a hearing at which
24 Respondents must justify Mr. Tigranyan's continued detention [] actually 'promotes the
25 Government's interest—one we believe to be paramount—in minimizing the enormous impact of

---

[3] Respondent does not suggest that the humanitarian parole provision of 8 U.S.C. § 182(d)(5)(A) provides an adequate procedural safeguard against petitioner's prolonged detention. Nor could respondent plausibly do so in this case based on the lack of any record evidence to that effect. As a result, the court does not address it.

incarceration in cases where it serves no purpose.'" ECF No. 12 at 15 (quoting Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020)). This factor also weighs in favor of petitioner.

In light of this analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted and respondent be ordered to provide him a bond hearing before an IJ within fourteen days where the IJ must order petitioner released unless the IJ finds that he is a risk of flight or danger to the community by clear and convincing evidence. See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance); Singh, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money.").

**IV.    Conclusion**

Accordingly, IT IS HEREBY ORDERED that petitioner's motions to proceed in forma pauperis (ECF Nos. 13, 15) are granted.

IT IS FURTHER RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondent be ordered to provide petitioner with a bond hearing before an IJ within fourteen days from the date of this order where the IJ must order petitioner released unless the IJ finds that he is a risk of flight or danger to the community by clear and convincing evidence.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties

////

////

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 13, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE